HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ETHAN SANDERS, a minor, by and through his Guardian ad Litem BRUCE A. WOLF; and ZWANDI MANNEY and ERIC SANDERS,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. C05-5353RBL<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

THIS MATTER having come on for trial before this Court on October 11, 2006, and the Court having heard the testimony of the witnesses presented by the parties, having reviewed the exhibits, and having heard argument of counsel,

NOW, THEREFORE, the Court makes the following

**FINDINGS OF FACT**

1. Ethan Sanders is the son of Eric Sanders and Zwandi Manney and was born on July 12, 2002 at the Naval Hospital Bremerton.

2. All of the care received by Zwandi Manney during her labor and delivery and Ethan Sanders after his delivery at Naval Hospital Bremerton was performed by the agents and employees of the defendant, United States of America.

3. Ethan Sanders was delivered vaginally by vacuum extraction by Dr. G.S. Lanneau at 0306 on July 12, 2002 and was born with a nuchal cord that was reduced. He also suffered from a shoulder

dystocia just prior to delivery.  His apgars were variously reported as 4 at one minute, 6 at five minutes and 8 at ten minutes.

4.	A cord blood gas sample was obtained which was normal and showed no evidence that Ethan Sanders was born hypoxic or had sustained any type of metabolic acidosis.

5.	Dr. M.A. Daeley, a pediatrician, assumed care of Ethan Sanders immediately after the delivery.  He estimated the fetal weight to be three kilos.  He transferred Ethan Sanders to the neonatal intensive care unit at 0342.

6.	Ethan Sanders required assistance with breathing at the time of his birth.  Positive pressure ventilation (PPV) was started by Dr. Daeley shortly after the baby's birth.  The baby developed what was described as copious secretions.  Dr. Daeley continued to provide PPV while also trying to suction the secretions as well as to intubate the baby.

7.	There were five attempts at intubation that took place from shortly after the time that the baby was delivered until the final attempt at 0411.

8.	A "code blue" was called at 0346 and the full crash team was assembled because there were inadequate breath sounds and the baby was not being resuscitated.  Thereafter the baby's heart rate could not be palpated or ausculated.  Attempts to determine whether the endotracheal tube was properly placed by the use of two different $CO_2$ indicators showed on two occasions that it was not properly positioned and therefore the baby was not being properly ventilated.

9.	As a result of the PPV Ethan Sanders developed bilateral pneumothoracies that were never treated because Dr. Daeley had not placed a chest tube or performed a needle aspiration of a newborn since 1996 and did not attempt to treat them.  The pneumothoracies were not congenital or genetic but caused by Dr. Daeley.  Because the lungs were almost completely collapsed, gas could not be exchanged and blood was not flowing to the lungs and therefore there was neither adequate oxygenation nor ventilation.  In addition, epinephrine that was administered through the endotracheal tube could not go anywhere and this vital medication could not get into the baby's system to boost the blood pressure and enhance necessary blood flow to the brain.

10.	The neonatal transport team from Madigan Army Medical Center arrived at Naval Hospital Bremerton at 0425, they assumed care of Ethan Sanders at 0450 and he was transported at 0620.

11. The first arterial blood gas sample was taken from Ethan Sanders at 0520 and revealed that Ethan Sanders was suffering a severe metabolic acidosis which resulted in a lack of oxygen to his brain and caused Ethan Sanders to sustain severe brain damage.

12. Ethan Sanders was admitted to Madigan Army Medical Center on July 12, 2002 and was discharged on July 26, 2002.

13. Ethan Sanders had an MRI on May 15, 2003 which showed brain injury that was consistent with a near total (profound) asphxic event affecting the term infant.

14. It was a violation of the standard of care not to have been able to clear secretions and place an endotracheal tube properly within about 2-4 minutes after it was known that PPV was not working.

15. The failure to properly place the endotracheal tube and verify its position in a timely fashion was a violation of the standard of care.

16. The failure to timely recognize the pneumothoracies and to properly treat them was a violation of the standard of care.

17. There was a failure to timely and adequately suction Ethan Sanders.

18. The dosages of drugs used in the resuscitation were inadequate.

19. There was a delay in summoning help and in failing to obtain proper help and there was a failure to have a contingent plan to deal with an asphyxiated newborn.

20. There was a failure to use adequate dosages of epinephrine and to administer it in a timely fashion.

21. There was a failure to obtain essential data in a timely manner including, oxygen saturation, blood gases and chest x-rays.

22. The severe metabolic acidosis that Ethan Sanders sustained was due to the blood not being properly oxygenated and circulated as the result of the failure to properly resuscitate the baby in a timely fashion and was the cause of the brain damage suffered by Ethan Sanders.

23. The injury to Ethan Sanders' brain took place after his birth as a result of the improper and lengthy resuscitation that was a violation of the standard of care for reasonably prudent health care providers in this situation.

24. The brain damage observed on Ethan Sanders' MRI on May 15, 2003 was proximately

1 caused by the failure of the agents and employees of the United States of America at Naval Hospital
2 Bremerton to properly and timely resuscitate him after his birth.
3     25.    Ethan Sanders sustained an acute neonatal encephalopathy secondary to the injuries he
4 sustained immediately after birth due to the negligence of the agents and employees of the United States.
5 This has resulted, in all reasonable medical probability, in the following:
6         a.    Spastic-athetoid quadriparesis.
7         b.    Relative right hemiparesis.
8         c.    Axial hypotonia with postural instability.
9         d.    Severe fine and gross motor deficits.
10        e.    Oral motor deficits that result in impaired oral motor control/feeding, marginal
11              nutrition, slow weight gain and a need for a feeding tube and a risk for aspiration.
12        f.    Mixed communication disorder with speech dyspraxia resulting in expressive
13              language deficits.
14        g.    Impaired mobility with postural instability with the need for bilateral orthotics.
15        h.    Assisted mobility needs which includes the use of a walker and manual and electric
16              wheelchairs.
17        i.    Impairment in activities of daily living.
18    26.    All of Ethan Sanders' injuries are permanent and he will have them for his entire lifetime.
19    27.    Ethan Sanders probably has normal cognitive function.
20    28.    Ethan Sanders' life expectancy is 65 years.
21    29.    Ethan Sanders has the following functional and health-related problems all proximately
22 caused by the negligence of defendant based upon reasonable medical probability:
23        a.    Unusual health maintenance and adaptation demands related to encephalopathy,
24              cerebral palsy, hemiparesis and communication impairment.
25        b.    Neuromuscular dysfunction due to decreased truncal tone with fluctuating tone in
26              extremities and right hemiparesis.
27        c.    Impaired ability to swallow and chew related to encephalopathy and cerebral palsy
28              resulting in nutritional dependency on gastrostomy feedings.

      d.      Impaired communication skills related to encephalopathy and cerebral palsy with abnormal oral-motor tone resulting in dependency upon care-givers for communication needs and support of assistive devices.

      e.      Self-care and management deficits related to encephalopathy, cerebral palsy, hemiparesis, communication impairment and impaired ability to swallow.

30.    Ethan Sanders will always be dependent on gastrostomy tube feeding for his nutrition.

31.    Ethan Sanders will be dependent on communication devices for most of his communication.

32.    Ethan Sanders will be dependent on a wheelchair for his daily mobility.

33.    Ethan Sanders will never achieve competitive employment.

34.    Ethan Sanders will never be able to live independently and will require 24-hour adult supervision.

35.    The cost of Ethan Sanders' care over his lifetime, including the costs of necessary medical equipment, home modifications, personal assistance with all aspect of daily living and medical care, reduced to present value, will be $3,907,089.00

36.    But for the injuries caused to him shortly after birth, Ethan Sanders would have possessed the ability to complete high school, at a minimum, and to be gainfully employed for at least 38 years. Given his condition, Ethan will never be competitively employed. Ethan Sanders will incur a loss of earning capacity over the course of his work-life expectancy when reduced to present value in the amount of $1,110,353.00.

37.    Ethan Sanders will be permanently and severely disabled throughout his lifetime.

38.    Ethan Sanders will, more probably than not, experience a profound and permanent loss of the ability to enjoy life. As an individual with normal cognition, he will always be aware of the severe limitations imposed upon him by his physical condition. Not only will he need assistance for his daily living, his physical condition will present a significant obstacle to establishing interpersonal relationships which provide joy and satisfaction to others without such limitations. His awareness of the world around him will only serve to make these deficits all the more painful.

39.    Ethan Sanders' medical expenses total $82,758.63 which sum reflects the amount actually paid for medical goods and services provided to Ethan Sanders.

ORDER
Page - 5

40. Ethan Sanders' grandparents, Novella and Glen Manney, make a claim for expenses they have incurred as the care-givers for Ethan Sanders. The grandparents are not parties to this litigation and therefore lack standing to make a claim.

41. Zwandi Manney and Eric Sanders are parties to this litigation and make a claim for damages caused by the loss of the parent-child relationship. In Washington, the law provides that a parent may recover for the injury or death of a minor child only if he or she has regularly contributed to the support of his or her minor child. A parent must have significant involvement in his or her minor child's life to recover under this statute. *See Blumenshein v. Voelker,* 124 Wash. App. 129 (2004). Neither Zwandi Manney nor Eric Sanders have contributed in a significant way to the financial or psychological support of Ethan Sanders. Time and time again they have avoided their responsibility to tend to the needs of their son, or to participate in the decisions central to his care and well-being. This they have done of their own volition and not because Ethan's grandparents have, in any way, excluded them from Ethan's life.

Based upon the above findings of fact the Court makes following

## **CONCLUSIONS OF LAW**

1. Plaintiffs have brought this action against the United States pursuant to the Federal Tort Claim Act (FTCA), 28 U.S.C. sections 2671 et. seq. The Court has jurisdiction pursuant to 28 U.S.C. section 1346.

2. All of the acts of the health care providers at Naval Hospital Bremerton on July 12, 2002, were the acts of the United States of America because they were their agents and employees.

3. The agents and employees of Naval Hospital Bremerton violated the standard of care for reasonably prudent health care providers in the State of Washington in their care and treatment of Ethan Sanders immediately following his birth on July 12, 2002 and were therefore negligent.

4. The negligence of the said agents and employees of the defendant were a proximate cause of severe, disabling and permanent injuries to Ethan Sanders.

5. Ethan Sanders is awarded damages for his future costs of care in the amount of $3,907,089.00.

6. Ethan Sanders is awarded damages for his loss of earning capacity in the amount of $1,110,353.00.

7. Ethan Sanders is awarded damages for past medical expenses in the amount of $82,758.63.

8. Ethan Sanders is awarded general damages in the total amount of $2,500,000.00.

9. The government has requested that the Court enter a judgment which provides for the periodic payment, in whole or in part, of the future economic damages, to include future medical care and loss of earning capacity. Pursuant to RCW 4.56.260 the Court hereby requests that proposals which meet the requirements of the statute be submitted to the Court no later than the end of the day on November 3, 2006. Because the trier of fact has already determined the present value of all future economic damages ($5,017,442.00), the Court will not entertain any proposal where the purchase price of the annuity package is greater than or less than $5,017,442.00.

**IT IS SO ORDERED.**

DATED this 16th day of October, 2006.

_Ronald B. Leighton_
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE